UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HANIEH AHADIAN; and
ALI FATHOLLAHZADEH,

Plaintiffs,

v.

MARCO RUBIO, *Secretary U.S. Department of State, in his official capacity*; and

ROBERT JACHIM, *in their official capacity as Acting Director of Screening, Analysis, and Coordination*,

Defendants.

Civil Action No. 24-cv-12168-ADB

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Hanieh Ahadian ("Ahadian" or "Plaintiff Ahadian") and Ali Fathollahzadeh ("Fathollahzadeh " or "Plaintiff Fathollahzadeh") (collectively, "Plaintiffs") bring suit against Marco Rubio, in his official capacity as Secretary of the U.S. Department of State, and Robert Jachim, in his official capacity as Acting Director of Screening, Analysis, and Coordination within the Department of State (collectively, "Defendants"), for failure to adjudicate Fathollahzadeh's visa application within a reasonable time. The Complaint asserts four causes of action pursuant to the Mandamus and Venue Act ("MVA"), 28 U.S.C. § 1361 (Count I), and the Administrative Procedure Act ("APA") 5 U.S.C. §§ 706(2) (Count II), 706(1) (Count III), and

555(b) (Count IV). [ECF No. 1 ("Complaint" or "Compl.") ¶¶ 97–158]. For the following reasons, Defendants' motion to dismiss, [ECF No. 15], is **GRANTED** without prejudice.

## I. BACKGROUND

Following a brief review of the applicable statutory scheme, the Court provides a summary of the relevant facts, taken primarily from the Complaint. As it may on a motion to dismiss, the Court also considers "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

### A. Statutory Scheme

Under the Immigration and Nationality Act ("INA"), a U.S. citizen may seek lawful permanent resident status for an immediate relative, including a spouse. 8 U.S.C. §§ 1154(a)(1)(A)(i), 1151(b)(2)(A)(i); see also id. §§ 1181(a), 1182(a)(7)(A) (a noncitizen must have a visa to be admitted to the United States as an immigrant). Specifically, the U.S. citizen must file a Form I-130, Petition for Alien Relative ("petition") with U.S. Citizenship and Immigration Services ("USCIS"), confirming that the noncitizen beneficiary qualifies as an eligible family member. Id. §§ 1154(a)(1)(A)(i), 1151(b)(2)(A)(i) (defining spouse as an immediate relative for purposes of the petition); 8 C.F.R. § 204.1(a). If eligibility is established, USCIS approves the petition and, for noncitizen beneficiaries outside of the United States, forwards the case to the State Department's National Visa Center ("NVC"). 8 U.S.C. § 1202; 8 C.F.R. § 204.2(a)(3).

At this stage, the beneficiary submits the Form DS-260 "Online Application for Immigrant Visa and Alien Registration" ("DS-260") to the NVC, which begins the visa

application process. See 9 U.S. Dep't of State, Foreign Affairs Manual ("FAM") § 504.1-2(a)(1),(b)(2); 22 C.F.R. § 42.63(a)(1) ("Every alien applying for an immigrant visa must make application, as directed by the consular officer, on Form DS-230, Application for Immigrant Visa and Alien Registration, or on Form DS-260, Electronic Application for Immigrant Visa and Alien Registration."). The NVC then gathers additional materials from the noncitizen beneficiary and collects a fee. 9 FAM § 504.1-2(b)(2). Once the NVC processing is completed, the State Department schedules an immigration visa interview with a consular officer at an embassy with jurisdiction over the beneficiary's residence. 8 U.S.C. § 1202(a); 22 C.F.R. §§ 42.61(a), 42.62; Arab v. Blinken, 600 F. Supp. 3d 59, 63 (D.D.C. 2022).

Taking into consideration the visa application and the applicant's representations during the interview, a consular officer determines whether to "issue the visa" or "refuse the visa." 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed and executed before a consular officer . . . the consular officer must issue the visa, [or] refuse the visa under INA 212(a) or 221(g) or other applicable law . . . .")[1]; id. § 40.6 ("A visa can be refused only upon a ground specifically set out in the law or implementing regulations."); 9 FAM § 301.4-1(b)(1)–(15) (providing summary of grounds for refusal, including describing Section 221(g) refusal as "[a]pplication does not comply with INA"). A consular officer, however, "cannot temporarily refuse, suspend . . . or hold the visa for future action." 9 FAM § 504.9-2. The authority to grant a visa rests exclusively with the consular officer." Ghannad-Rezaie v. Laitinen, 757 F. Supp. 3d

---

[1] A consular officer may also "discontinue granting the visa" pursuant "to an outstanding order under INA 243(d)," which allows the United States to sanction countries for failing to accept the return of their citizens and nationals removed from the United States. That provision, however, is not relevant for present purposes. 22 C.F.R. § 42.81(a); 8 U.S.C. § 1253(d).

148, 151 (D. Mass. 2024) (first citing 8 U.S.C. § 1201(a)(1)(A); and then citing 22 C.F.R. § 42.71(a)).

Section 221(g) of the INA, the applicable ground for refusal in this case, provides that no visa shall be issued if

> (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law.

8 U.S.C. § 1201(g); see also id. § 1182(a)(1)–(10) (defining "[c]lasses of aliens ineligible for visas or admissions," on, among others, health-related grounds, criminal and related grounds, and security and related grounds); 9 FAM § 302.1-8(B)(a) (listing additional grounds for refusing a visa under Section 221(g), including where an applicant "fails to furnish information as required by law or regulations" or an application "is not supported by the documents required by law or regulations"). In situations where the information before the consular officer based on the DS-260 is "inadequate to determine the alien's eligibility to receive an immigrant visa," the officer may request additional information from the applicant. 22 C.F.R. § 42.63(c). The consular officer requests such information through a Form DS-5535, Supplemental Questions for Visa Applicants, which covers topics such as an applicant's travel and employment history. See Al Shaleli v. Blinken, No. 22-cv-012442022, WL 4664245, at *3 & n.1 (E.D. Cal. Sept. 30, 2022); Taherian v. Blinken, No. 23-cv-01927, 2024 WL 1652625, at *1 (C.D. Cal. Jan. 16, 2024).

If the consular officer refuses the visa "because the officer determines the alien to be inadmissible," the officer must "provide the alien with a timely written notice that . . . (A) states the determination, and (B) lists the specific provision or provisions of law under which the alien is inadmissible." 8 U.S.C. § 1182(b)(1).[2] "The consular officer 'may then conclude that the applicant could perhaps still receive a visa eventually if circumstances change' and may 'place an officially refused application in administrative processing.'" Ghannad-Rezaie, 757 F. Supp. 3d at 151 (quoting Karimova v. Abate, No. 23-cv-05178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) (per curiam)).

"A refusal under INA § 221(g) may be 'overcome . . . when additional evidence is presented, or administrative processing is completed.'" Ghannad-Rezaie, 757 F. Supp. 3d at 151 (alteration in original) (quoting 9 FAM § 306.2-2(A)(a)). If "the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). Under such circumstances, a consular officer "re-open[s] and re-adjudicate[s] the case" and "determin[es] whether the applicant is eligible for a visa" if either additional evidence is presented or the consular officer determines that administrative processing is complete. Ghannad-Rezaie, 757 F. Supp. 3d at 151 (quoting 9 FAM § 306.2-2(A)(a)(1)) (alteration in original). According to the FAM, "[a] refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM § 302.1-8(B)(c).

---

[2] No explanation is required when the officer determines that the noncitizen is ineligible on criminal or national security grounds. 8 U.S.C. § 1182(b)(3).

### B. Factual Background

Plaintiff Ahadian, a U.S. citizen, filed an I-130 visa petition on behalf of her husband, Plaintiff Fathollahzadeh, an Iranian national, on or about June 22, 2021. [Compl. ¶¶ 69–71]. On July 6, 2022, USCIS approved the visa petition and on September 12, 2022, Plaintiffs paid the appropriate immigrant visa processing fee and timely submitted the DS-260 along with supporting documentation to the NVC. [Id. ¶¶ 72–73]. Plaintiff Fathollahzade, and his two sons, had a consular interview at the U.S. Embassy in Abu Dhabi on August 28, 2023. [Id. ¶ 74]. While the sons' visa applications were granted, Plaintiff Fathollahzadeh was informed that his case would need to undergo administrative processing. [Id.]. Also on August 28, 2023, Plaintiff Fathollahzadeh was asked to complete the DS-5535 questionnaire, which he promptly completed and submitted on September 8, 2023. [Id. ¶ 75]. Since then, Plaintiffs have inquired about the status of Fathollahzadeh's visa application on numerous occasions but "have received no useful information." [Id. ¶¶ 78–79].

### C. Procedural History

On August 23, 2024, Plaintiff filed this action against Antony Blinken and Robert Jachim, named in their official capacities as, respectively, Secretary of State and Acting Director of the Office of Screening, Analysis, and Coordination within the Department of State. [Compl. ¶¶ 26–27]. On January 21, 2025, Marco Rubio replaced Antony Blinken as Secretary of State. Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), Rubio in his official capacity is substituted as a Defendant in place of Blinken. Defendants moved to dismiss Plaintiffs' Complaint on December 19. 2024, [ECF Nos. 15, 16], and Plaintiffs opposed on January 2, 2025, [ECF No. 17 ("Opp'n")]. Both parties have since filed supplemental authorities. [ECF Nos. 18, 19].

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

In general, when evaluating a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must determine whether the facts as alleged in the complaint, "taken at face value," support subject-matter jurisdiction. Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017). When undertaking this evaluation, courts "apply the same plausibility standard used to evaluate a motion under Rule 12(b)(6)." Gustavsen v. Alcon Lab'ys, 903 F.3d 1, 7 (1st Cir. 2018). The Court must therefore "accept the factual averments of the complaint as true, and construe those facts in the light most congenial to [Plaintiffs'] cause." Royal v. Leading Edge Prods., 833 F.2d 1, 1 (1st Cir. 1987) (alterations omitted).

### B. Rule 12(b)(6)

In a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019) (citing Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7 (1st Cir. 2011); Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009)). "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## III. DISCUSSION

Defendants have moved to dismiss the Complaint on several grounds. Specifically, Defendants assert that they have not unlawfully withheld or unreasonably delayed the adjudication of Plaintiff Fathollahzadeh's visa application because (i) Plaintiffs have not stated a mandatory, non-discretionary duty to act; (ii) administrative processing under Section 221(g) constitutes refusal and as such no further additional action is required; and (iii) the doctrine of consular nonreviewability bars judicial review. [ECF No. 16 at 5–14]. Further, Defendants contend that the alleged delay is not unreasonable. [Id. at 14–20].

As a threshold matter, the Court makes two observations. First, the Court notes that Count II, which alleges a violation of § 706(2), appears to rely on the same theory as Count III which alleges contravention of § 706(1), that is, the unlawful withholding of agency action or unreasonable delay of agency action. See [Compl. ¶ 116–31]. Thus, to the extent Count II is a mere variation of Count III, the Court does not separately consider it.[3] Rezai v. Blinken, No. 24-

[3] Any claim under § 706(2) would fail regardless because it requires a final agency action to be "set aside." § 706(2). Given that Plaintiffs insist that a final adjudication of Plaintiff Fathollahzadeh's visa application has not yet occurred, there appears no cause of action ripe for challenge under § 706(2). See [Opp'n at 17–18]; Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric., 946 F.3d 615, 620 (D.C. Cir. 2020) ("When review is sought 'under [a] general review provision[ ] of the APA,' like section 706(2)(A), 'the agency action in question must be final agency action.'" (alterations in original) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990)); Lee v. Blinken, No. 23-cv-01783, 2024 WL 639635, at *7 (D.D.C. Feb. 15, 2024) (no cause of action under § 706(2) because plaintiffs argued that they "have yet to receive a final adjudication of their visa application").

cv-01016, 2024 WL 4830988, at *2 (S.D. Cal. Nov. 18, 2024) ("[G]iven that Plaintiffs' Section 706(2) claim seeks to compel adjudication of their visa application, it should instead be pleaded under Section 706(1) which permits a court to 'compel agency action unlawfully withheld or unreasonably delayed.'" (quoting 5 U.S.C. § 706(1)); Daneshvar v. Blinken, No. 24-cv-00838, 2024 WL 5410448, at *3 (C.D. Cal. Nov. 21, 2024) (noting that claims under § 706(2) are best evaluated under § 706(1)).

Second, as to "unlawful withholding" under § 706(1), Plaintiffs allege that "Defendants have failed to adjudicate Plaintiff Fathollahzadeh's application within a reasonable time and have instead unlawfully withheld agency action." [Compl. ¶ 122]; see also [id. ¶ 142 ("Defendants are unlawfully withholding discrete action they are required to take within the temporal limits imposed by statute and the express intent of Congress.")]. Even when construing the Complaint liberally, as pleaded, the Court finds that Plaintiffs' "'unlawfully withheld' claim sounds in 'unreasonable delay' and that [Plaintiffs] fail, in any respect, to distinguish between visa adjudications being 'unlawfully withheld' as opposed to 'unreasonably delayed' under § 706(1)." Lee v. Blinken, No. 23-cv-01783, 2024 WL 639635, at *7 (D.D.C. Feb. 15, 2024) (cleaned up and citation omitted); see generally [Opp'n]. "The Court's 'unreasonable delay' analysis 'therefore addresses the entirety of [P]laintiff's § 706(1) claim[ ] to compel agency action.'" Rezai, 2024 WL 4830988, at *5 (alterations in original) (quoting Tate v. Pompeo, 513 F. Supp. 3d 132, 147 n.6 (D.D.C. 2021)).[4] Having settled these preliminary matters, the Court now proceeds to analyze Plaintiffs' unreasonable delay claims.

---

[4] Separately, the Court observes that there is limited guidance from this Circuit as to the distinction between "unreasonably delayed" and "unlawfully withheld" under § 706(1). Other courts in this session seemingly adopted the Tenth Circuit's reasoning in Forest Guardians v.

### A. The APA and MVA

#### 1. Jurisdiction

The APA requires a government agency to "within a reasonable time . . . conclude a matter presented to it," 5 U.S.C. § 555(b), and provides that courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1). "While the APA does not provide an independent source of subject matter jurisdiction," Conservation L. Found. v. Busey, 79 F.3d 1250, 1261 (1st Cir. 1996), the MVA vests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361.[5] As relevant here, courts in this Circuit "construe the APA and the MVA to be coextensive to the extent that

---

Babbitt, holding that an agency that fails to meet a non-discretionary deadline has "unlawfully withheld" action. 174 F.3d 1178, 1189–91 (10th Cir. 1999) (explaining that the legislative history of § 706(1) "provide[s] little guidance regarding any possible distinction" between the terms); see Oxfam Am., Inc. v. U.S. Sec. & Exch. Comm'n, 126 F. Supp. 3d 168, 172–73 (D. Mass. 2015); Am. Acad. of Pediatrics v. U. Food & Drug Admin., 330 F. Supp. 3d 657, 663–64 (D. Mass. 2018). Specifically, the Court of Appeals concluded that the distinction "turns on whether Congress imposed a date-certain deadline on agency action," and, as such, "if an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions—such as the APA's general admonitions that agencies conclude matters presented to them 'within a reasonable time'—a court must compel only action that is delayed unreasonably." Forest Guardians, 174 F. 3d at 1190 (internal citation omitted). Here, in the absence of any "absolute deadline," see infra, the Court's query therefore ends with analyzing whether Plaintiffs' visa application has been "unreasonably delayed." Id.

[5] The Court notes that although Defendants cite both Rules 12(b)(1) and 12(b)(6) as grounds for dismissal, the motion to dismiss is not "particularly precise in parsing out the specific grounds of its challenge to the counts in the Complaint." Aramnahad v. Rubio, No. 24-cv-01817, 2025 WL 973483, at *3 n.7 (D.D.C. Mar. 31, 2025). While a clear duty to act for a mandamus claim requires that Plaintiffs' establish subject matter jurisdiction, "[t]he requirement that Plaintiffs identify a non-discretionary duty for purposes of the APA . . . speaks only to whether Plaintiffs have stated a claim for relief." Id. The Court will therefore review the unreasonable delay claim under Rule 12(b)(6). See id. (citing Sierra Club v. Jackson, 648 F.3d 848, 854 (D.C. Cir. 2011)); see also Conley v. U.S. Dep't of State, 731 F. Supp. 3d 104, 108–10 (D. Mass. 2024) (Defendants moved to dismiss under Rule 12(b)(6) in an action seeking a writ of mandamus to compel the government to complete administrative processing).

the APA creates a nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay." Pishdadiyan v. Clinton, No. 11-cv-10723, 2012 WL 601907, at *11 (D. Mass. Feb. 7, 2012), report and recommendation adopted, No. 11-cv-10723, 2012 WL 602036 (D. Mass. Feb. 22, 2012), dismissed (Apr. 11, 2014); Kinuthia v. Biden, No. 21-cv-11684, 2022 WL 17653503, at *4 n.7 (D. Mass. Nov. 9, 2022). "Thus, a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis omitted).

Plaintiffs argue that "[s]tatutes, regulations, and agency guidance make clear that Defendants have a mandatory duty to adjudicate Plaintiff Fathollahzadeh's visa application within a reasonable time." [Compl. ¶ 5; see, e.g., id. ¶¶ 38–39, 50–67, 104–105, 136–140, 148]. Among others, Plaintiffs cite to 8 U.S.C. § 1202(b) of the INA as source of authority, which in relevant part provides that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b); [Compl. ¶¶ 136–139]. Courts are split as to whether § 1202(b) creates a "nondiscretionary duty" establishing jurisdiction under the APA and MVA. See Conley v. U.S. Dep't of State, 731 F. Supp. 3d 104, 109 (D. Mass. 2024); id. at 110 (collecting cases). That said, district courts within the First Circuit have "typically found a 'nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay.'" Durrani v. Bitter, No. 24-cv-11313, 2024 WL 4228927, at *2 (D. Mass. Sept. 18, 2024) (quoting Conley, 731 F. Supp. 3d at 109). Because the Court finds no reason to reach a different outcome, and Defendants have not offered any persuasive arguments to the

contrary, it assumes without deciding that consular officers have a nondiscretionary duty to adjudicate visa applications without unreasonable delay.[6]

2. Consular Nonreviewability

The Supreme Court has recently held that "the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" Dep't of State v. Muñoz, 602 U.S. 899, 907 (2024) (quoting Trump v. Hawaii, 585 U.S. 667, 702 (2018)). Specifically, in relation to the doctrine of consular nonreviewability, the Court clarified that the INA "does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions." Id. at 908.

At issue here, however, is not whether the Court can review a final visa adjudication, but rather whether the Court can compel Defendants to adjudicate a visa application during administrative processing. [ECF No. 16 at 12–14]; [Opp'n at 20–22]. Courts are split on this issue, and the First Circuit has yet to provide guidance on this question. See Ghannad-Rezaie, 757 F. Supp. 3d at 152 (collecting cases); compare Dy v. Blinken, 703 F. Supp. 3d 314, 317 (D.

[6] To the extent Defendants rely on Karimova v. Abate for the proposition that Plaintiffs have failed to provide a source of law requiring the adjudication of Fathollahzadeh's visa application under § 555(b), see [ECF No. 16 at 6–8], the Court is not persuaded that the case is of much assistance to Defendants. No. 23-cv-05178, 2024 WL 3517852 (D.C. Cir. July 24, 2024). In Karimova, Plaintiff relied only on § 555(b) as the source of the consular officer's duty to act. Id. at *3. In an unpublished opinion, the D.C. Circuit found that § 555(b) merely offers a non-specific directive to "conclude a matter" within a "reasonable time," without "plac[ing] upon consular officers a 'crystal-clear duty'" to act. Id. at *4 (first quoting 5 U.S.C. § 555(b), and then quoting In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022)). In contrast here, Plaintiffs also invoke the MVA and § 706(1). As such, the Court finds Karimova of limited guidance. Motevali v. Rubio, No. 24-cv-01029, 2025 WL 885116, at *6 & n.4 (D.D.C. Mar. 21, 2025) (rejecting reliance on Karimova where plaintiffs cited provisions other than § 555(b) and further noting that the court was "reluctant to ascribe significance to a decision the D.C. Circuit chose not to publish").

Mass. 2023) (consular nonreviewability does not preclude claims seeking to compel final adjudication of visa application), and Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 11–12 (D.D.C. 2022) (visa application undergoing administrative processing not subject to consular nonreviewability), with Khan v. U.S. Dep't of State, 722 F. Supp. 3d 92, 98 (D. Conn. 2024) (consular nonreviewability bars compelling an official to adjudicate a visa application), and Samandar v. Blinken, 599 F. Supp. 3d 28, 29 (D. Mass. 2022) (consular nonreviewability "precludes review under the APA").

Given the different approaches among its sister courts and absent guidance from the First Circuit, for purposes of this order, the Court will assume that the consular nonreviewability doctrine does not bar judicial review of Plaintiffs' claims to compel agency action under the APA. See Conley, 731 F. Supp. 3d at 110.

3. Unreasonable Delay

"To state a claim for unreasonable delay under the APA, a plaintiff must allege that (1) a government agency failed to take legally required action and (2) the agency's delay in taking this action was unreasonable." Conley, 731 F. Supp. 3d at 110 (first citing S. Utah Wilderness All., 542 U.S. at 62–63; and then citing Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023)).

With regard to the first factor, as noted above, Defendants argue that by placing Plaintiff Fathollahzadeh's visa application in administrative processing, they have adjudicated his case and, as such, have taken the required agency action. [ECF No. 16 at 9–12]. Plaintiffs respond that there has been no final decision because Fathollahzadeh's application is still pending in administrative processing. [Opp'n at 17–18].

Both positions are supported by case law. Compare Conley, 731 F. Supp. 3d at 111 (refusal, even if the "agency identified a specific contingency that might warrant reconsideration," is a final decision), with Carter v. U.S. Dep't of Homeland Sec., No. 21-cv-00422, 2021 WL 6062655, at *3 n.3 (D.D.C. Dec. 22, 2021) (refusal followed by administrative processing is not a final decision), and Ramirez v. Blinken, 594 F. Supp. 3d 76, 87 (D.D.C. 2022) (refusal of visa application after consular interview is not final as it may be entered into "administrative processing"); and Ibrahim v. U.S. Dep't of State, No. 19-cv-00610, 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020) (consular decision not final if visa application is undergoing administrative processing) (collecting cases). Here, the Court is inclined to agree with those courts which have determined that refusal does not constitute a final decision. Specifically, Ghannad-Rezaie considered the language of 22 C.F.R. § 42.81(e), which provides that whenever "a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 757 F. Supp. 3d at 152 (quoting 22 C.F.R. § 42.81(e)). Because "shall" implies a requirement, the court reasoned that the regulation creates a mandatory duty to reconsider the refusal if new evidence is presented during administrative processing, and, as such, creates a duty to act. Id. Here, following Fathollahzadeh's consular interview, his application was placed in administrative processing, and he was asked to submit a DS-5535 questionnaire. [Compl. ¶¶ 3, 74–75]. Considering that Fathollahzade provided additional information through the DS-5535, the plain terms of the regulation suggest that the Department of State has a duty to reconsider. Accordingly, for the narrow purposes of this order, the Court assumes that Defendants have yet to discharge their duty to act.

The second factor requires that the agency's delay be unreasonable. To evaluate whether agency action is unreasonably delayed, courts in the First Circuit consider the six factors laid out in Telecomms. Rsch. & Action Ctr. v. F.C.C., 750 F.2d 70, 80 (D.C. Cir. 1984) (hereinafter "TRAC"). The TRAC factors are as follows:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

Id. (cleaned up).

Although Plaintiffs argue that the fact-intensive inquiry into the reasonableness of a delay is "not suitable for disposition a this [motion to dismiss] stage of litigation" and premature, [Opp'n at 23–24], they must nonetheless plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); see also Durrani, 2024 WL 4228927, at *3 (acknowledging that the TRAC factors are fact-intensive, but determining that the court must "evaluate the facts pleaded in the complaint and determine whether they plausibly state a claim for relief under the applicable law"); Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 12 (D.D.C. 2022) ("There is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage, so the question of whether discovery is necessary depends, as with any sort of claim, on the particular Complaint."), aff'd, 80 F.4th 330 (D.C. Cir. 2023). "Most sessions, however, evaluate the

TRAC factors at the motion to dismiss stage." Rezaii v. Kennedy, No. 24-cv-10838, 2025 WL 750215, at *4 (D. Mass. Feb. 24, 2025).

The first two TRAC factors are usually considered together. Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021). The first factor asks "whether the agency's response time . . . is governed by an identifiable rationale," Ctr. for Sci. in the Pub. Int. v. U.S. Food and Drug Admin., 74 F. Supp. 3d 295, 300 (D.D.C. 2014), and the second looks at whether "Congress has provided a timetable" that "may supply content for th[e] rule of reason," TRAC, 750 F.2d at 80. Neither factor supports a finding of unreasonable delay here.

As to the first factor, for visa applications, courts have generally found that an agency's process is governed by a "rule of reason," namely adjudicating them "in the order they were filed." Durrani, 2024 WL 4228927, at *4 (quoting Memon v. Blinken, No. 22-cv-00754, 2023 WL 1438396, at *2 (D.D.C. Feb. 1, 2023)). Nothing in the Complaint suggests that Defendants acted contrary to this practice or otherwise unreasonably with regard to Fathollahzadeh's visa application.

As to the second factor, Plaintiffs direct the Court to three statutory and regulatory provisions that they contend establish a timeline for processing visa applications: (1) 8 U.S.C. § 1571, which states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," 8 U.S.C. § 1571(b), [Compl. ¶ 109]; (2) Consolidated Appropriations Act of 2000, § 237(a), Pub. L. No. 106-113, 113 Stat. 1501, 1501A-430 (1999) (codified at 8 U.S.C. § 1201), which provides that "[i]t shall be the policy of the [DOS] to process immigrant visa applications of immediate relatives of United States citizens . . . within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service," [Compl. ¶ 148];

and (3) FAM § 504.7-2(b), which refers to Section 237 of Public Law 106-113, which declares that the State Department has "a policy under which immediate relative . . . visas be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security," [Compl. ¶ 148]. Courts have repeatedly held, however, that these provisions, are "'precatory' and therefore entitled to little weight." Mosayebian v. Blinken, No. 24-cv-00130, 2024 WL 3558378, at *10 (S.D. Cal. July 25, 2024) (quoting Janay v. Blinken, 743 F. Supp. 3d 96, 116 (D.D.C. 2024)); Durrani, 2024 WL 4228927, at *4–5 (courts have interpreted § 1571(b) as nonbinding on agencies); Palakuru v. Renaud, 521 F. Supp. 3d 46, 51 (D.D.C. 2021) ("[P]refatory 'sense of Congress' language . . . is best interpreted as nonbinding." (quoting 8 U.S.C. § 1571(b))); id. at. 51–52 (collecting cases recognizing that "a sense of Congress resolution is not law" (quoting Emergency Coal. to Defend Educ. Travel v. U.S. Dep't of the Treasury, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008))); Ghannad-Rezaie, 757 F. Supp. 3d at 155 ("Both [§§ 1571(b) and 237(a), Pub. L. No. 106-113] [] represent congressional aspirations—not statutory deadlines—and thus merit only some weight in the TRAC analysis."); Noori v. Blinken, No. 23-cv-01463, 2024 WL 939990, at *3 n.3 (D.D.C. Mar. 5, 2024) (the FAM § 504.7-2 "policy is 'nonbinding' and 'insufficient to displace the significant discretion that Congress provided to the federal agencies tasked with processing immigrant applicants and vetting them to protect the national security.'" (quoting Pourshakouri v. Pompeo, No. 20-cv-00402, 2021 WL 3552199, at *9 n.11 (D.D.C. Aug. 11, 2021)). In other words, while Congress has stated a policy preference for the expeditious adjudication of visas, it did not provide a mandatory timeline, therefore leaving it to the Court to determine whether the delay is unreasonable. Dastagir, 557 F. Supp. 3d at 165 ("With no set timeline, the Court looks to case law for guidance.").

Here, case law does not support a finding that Defendants' delay in adjudicating Fathollahzadeh's visa application is unreasonable. At the time of this order, approximately twenty-one months have elapsed since Fathollahzadeh's application was placed in administrative processing. This is not outside the bounds of reasonableness. See Dastagir, 557 F. Supp. 3d at 165 (visa application in "administrative processing" for 29 months was not unreasonable); Zandieh v. Pompeo, No. 20-cv-00919, 2020 WL 4346915, at *5–7 (D.D.C. July 29, 2020) (same); Mirbaha v. Pompeo, 513 F. Supp. 3d 179, 185–86 (D.D.C. 2021) (27-month delay not unreasonable). Even considering the date when Plaintiff Ahadian first filed the Form I-130 on behalf of her husband, June 22, 2021, the Court cannot conclude that the adjudication of Fathollahzadeh's visa application is unreasonable. See Sarlak v. Pompeo, No. 20-cv-00035, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (noting that while no bright lines have been drawn, delays between three to five years are generally not considered unreasonable) (collecting cases). The first and second TRAC factors, in other words, do not support a finding of unreasonable delay.

The third and fifth factors are also ordinarily assessed together and relate to the "interests prejudiced by delay," including the "impact on human health and welfare and economic harm." Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005). Plaintiffs allege that the delay in the adjudication of Plaintiff Fathollahzadeh's visa application has placed emotional and financial strain on Plaintiffs. [Compl. ¶¶ 6, 84–87]. In support, Plaintiffs assert that maintaining two homes in two separate countries imposes financial difficulties on the family, single parenting has taken an emotional toll on Plaintiff Ahadian, and the two sons have suffered from being separated from their father. [Id. ¶¶ 86–87]. The Court deeply sympathizes with Plaintiffs and acknowledges the challenges faced by the family. That said, "the hardships that [Plaintiffs]

allege[] do not materially distinguish [their] circumstances from those of countless other adult citizens hoping to bring their [spouses] to the United States." Ghannad-Rezaie, 757 F. Supp. 3d at 156. As such, these factors do not support a finding of unreasonable delay.

The fourth TRAC factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." 750 F.2d at 80. Courts have generally "declined to move plaintiffs to 'the head of the queue' because doing so would 'simply move[] all others back one space and produce[] no net gain.'" Durrani, 2024 WL 4228927, at *5 (alterations in original) (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). The Court sees no reason to depart from this principle. Although Plaintiffs insist that the administrative process seemingly at issue here is not completed on a "first-in-first-out basis," [ECF No. 1-2 at 5]; [Opp'n at 27–28], the Court cannot discern how compelling agency action on Plaintiff Fathollahzadeh's visa application would not "necessarily come at the expense of similarly situated applicants." Sharifishourabi v. Blinken, No. 23-cv-03382, 2024 WL 3566226, at *9 (D.D.C. July 29, 2024) (internal quotation omitted). This factor thus supports a finding in Defendants' favor. Durrani, 2024 WL 4228927, at *5. Finally, because the Plaintiffs allege no facts suggesting bad faith or impropriety on the part of the Defendants, the sixth TRAC factor weighs neutrally in the Court's analysis. Palakuru, 521 F. Supp. 3d at 53. In sum, in light of the TRAC factors, the Court concludes that Plaintiffs have failed to state a claim for unreasonable delay under the APA and the MVA.[7]

---

[7] Plaintiffs' supplemental authority, Rezaii v. Kennedy, does not compel a different outcome. No. 24-cv-10838, 2025 WL 750215, at *1 (D. Mass. Feb. 24, 2025). Here, based on the facts alleged in the Complaint, the Court weighed the six TRAC factors and concluded that Plaintiffs have failed to state a claim to relief that is plausible on its face. See supra.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, [ECF No. 15], is **GRANTED** without prejudice.

**SO ORDERED.**

June 6, 2025

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE